**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lukner Rene,<br><br>        Petitioner,<br><br>v.<br><br>M. Gutierrez,<br><br>        Respondent. | No. CV-23-00214-TUC-SHR (BGM)<br><br>**REPORT AND RECOMMENDATION** |

On May 5, 2023, Petitioner Lukner Rene, who is currently incarcerated with the Federal Bureau of Prisons ("BOP") and was housed at the United States Penitentiary in Tucson, Arizona ("USP-Tucson"), filed a Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. (Doc. 1.) Petitioner raises one ground for relief in his petition, alleging that he suffered due process violations when USP-Tucson officials failed to notify him of three separate disciplinary reports used to revoke fifty-four days of his good-conduct credit. (*Id*. at 4-5.) Petitioner alleges that the only contact that he had with officers during the timeframe in which it is alleged that he received notice was on two separate occasions when officers threatened him with sexual assault and battery if he refused to sign waivers related to hearings on the incidents. (*Id*.) Under LRCiv 3.7(e), 72.1(c), and 72.2(a)(2), this matter was referred to Magistrate Judge Bruce G. Macdonald for a Report and Recommendation. (Doc. 4.) After reviewing the briefs, exhibits, and record in this case, Magistrate Judge Macdonald recommends that the petition be denied.

Case 4:23-cv-00214-SHR   Document 14   Filed 10/17/23   Page 2 of 10

# BACKGROUND[1]

This action arises from disciplinary incidents in the special housing unit ("SHU") of USP-Tucson in the early days of April 2023. (Doc. 1-2 at 2, 7, 12.) On April 7, 2023, at approximately 5:30 p.m., Petitioner told a corrections officer that "[I]f I don't get the phone today[,] I'm willing to murder a staff member," and that the officer should "go grab the motherf*cking team already." (Doc. 13-1 at 21.) As a result, Petitioner was issued an incident report for threating bodily harm,[2] a copy of which was allegedly given to him at 6:40 p.m. that night. (*Id*. ¶¶ 14-16.) The officer who delivered the copy and advised Petitioner of his rights stated that Petitioner yelled, "F*ck you[,] bitch, suck my d*ck. How about that[?] [W]rite that down[,] b*tch." (Doc. 13-1 at 23.) Petitioner allegedly ripped up the report and threw it back under the door. (*Id*. ¶ 24.) The next day, the Unit Discipline Committee ("UDC") reviewed the report and referred the incident to the Disciplinary Hearing Officer ("DHO") for a hearing. (*Id*. at 22.) Petitioner was present at the review and informed the UDC chairman that he "just [wanted to] waive the DHO." (*Id*. ¶ 17.)

An hour and a half after Petitioner was issued the aforementioned report for threatening staff, he was cited for destroying property and becoming disruptive by tampering with the sprinkler system and destroying a mattress in an attempt to use the mattress as a weapon against staff.[3] (Doc. 13-1 at 43.) Two days later, a corrections officer allegedly delivered a copy of the incident report to Petitioner. (*Id*. ¶¶ 14-16.) A day after he allegedly received a copy of the report, Petitioner informed the UDC committee that "it's all fabricated," and the committee referred the charges to the DHO. (*Id*. at 44.)

In the early morning hours of April 8, 2023, apparently while in restraints, Petitioner again threatened a corrections officer, telling him:

> All of y'all going in my lawsuit. Better yet, do your homework. See how I'm the guy who closed (USP) Thompson. I already got seven bodies[,] and I ain't done yet. Y'all fixing to be eight, nine, and ten. Just wait till these chains come off[.] I'm gonna f*ck all of y'all up.

---

[1] The information in this section is stated in the light most favorable to Petitioner.
[2] Incident Report Number: 3756325.
[3] Incident Report Number: 3756362.

# BACKGROUND[1]

This action arises from disciplinary incidents in the special housing unit ("SHU") of USP-Tucson in the early days of April 2023. (Doc. 1-2 at 2, 7, 12.) On April 7, 2023, at approximately 5:30 p.m., Petitioner told a corrections officer that "[I]f I don't get the phone today[,] I'm willing to murder a staff member," and that the officer should "go grab the motherf*cking team already." (Doc. 13-1 at 21.) As a result, Petitioner was issued an incident report for threating bodily harm,[2] a copy of which was allegedly given to him at 6:40 p.m. that night. (*Id*. ¶¶ 14-16.) The officer who delivered the copy and advised Petitioner of his rights stated that Petitioner yelled, "F*ck you[,] bitch, suck my d*ck. How about that[?] [W]rite that down[,] b*tch." (Doc. 13-1 at 23.) Petitioner allegedly ripped up the report and threw it back under the door. (*Id*. ¶ 24.) The next day, the Unit Discipline Committee ("UDC") reviewed the report and referred the incident to the Disciplinary Hearing Officer ("DHO") for a hearing. (*Id*. at 22.) Petitioner was present at the review and informed the UDC chairman that he "just [wanted to] waive the DHO." (*Id*. ¶ 17.)

An hour and a half after Petitioner was issued the aforementioned report for threatening staff, he was cited for destroying property and becoming disruptive by tampering with the sprinkler system and destroying a mattress in an attempt to use the mattress as a weapon against staff.[3] (Doc. 13-1 at 43.) Two days later, a corrections officer allegedly delivered a copy of the incident report to Petitioner. (*Id*. ¶¶ 14-16.) A day after he allegedly received a copy of the report, Petitioner informed the UDC committee that "it's all fabricated," and the committee referred the charges to the DHO. (*Id*. at 44.)

In the early morning hours of April 8, 2023, apparently while in restraints, Petitioner again threatened a corrections officer, telling him:

> All of y'all going in my lawsuit. Better yet, do your homework. See how I'm the guy who closed (USP) Thompson. I already got seven bodies[,] and I ain't done yet. Y'all fixing to be eight, nine, and ten. Just wait till these chains come off[.] I'm gonna f*ck all of y'all up.

---

[1] The information in this section is stated in the light most favorable to Petitioner.
[2] Incident Report Number: 3756325.
[3] Incident Report Number: 3756362.

(Doc. 13-1 at 32.) Petitioner was issued a disciplinary report for the comments,[4] a copy of which was allegedly delivered the following morning. (*Id*. ¶¶ 16-16.) At the UDC meeting on April 10, 2023, Petitioner once again informed the committee that "it's all fabricated," and the committee referred the matter to the DHO for a hearing. (Doc. 13-1, ¶ 17 at 33.)

On May 5, 2023, Petitioner filed his § 2241 Petition alleging procedural due process violations because corrections officers failed to provide him with copies of the aforementioned incident reports. (Doc. 1 at 4-5.) Petitioner requests that the Court vacate the reports, remove them from his prison record, and restore the loss of good conduct credits that resulted from the discipline. (*Id*. at 11.) On June 16, 2023, Warden Gutierrez answered Petitioner's claims (Doc. 13); and Petitioner failed to file an optional reply. This Report and Recommendation follows.

**LEGAL STANDARD**

Under 28 U.S.C. § 2241, a district court may grant habeas relief when a petitioner is in custody in "violation of the Constitution or laws or treaties of the United States." Generally, motions to contest the legality of a sentence are filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution are brought under § 2241 in the custodial court. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). An inmate may obtain relief under § 2241 for the loss of good conduct time credits if the prison disciplinary proceeding did not comply with due process. *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016). This is because the loss of good time credit may affect the duration of the prisoner's confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973) (ruling that inmates' suit seeking restoration of good time credits was "within the core of habeas corpus in attacking the very duration of their physical confinement"). A petitioner bears the burden of proving that he is being held contrary to federal law, and he must satisfy his burden by a preponderance of the evidence. *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

---

[4] Incident Report Number: 3756376.

**DISCUSSION**

Petitioner files the petition at hand asserting that his procedural due process rights were violated because he was not given copies of three incident reports that were used to reduce his good conduct time. (Doc. 1 at 4-5.) Petitioner also contends that correctional staff threatened him with sexual assault and bodily harm if he attended the disciplinary hearings related to those incidents. (*Id*. at 5-6.) Respondent argues that the Court should deny Petitioner's requests and dismiss this case because Petitioner fails to demonstrate that he exhausted his administrative remedies before filing suit and that the disciplinary proceedings at issue comported with procedural due process requirements. (Doc. 13 at 7-14.) Respondent adds that the Court lacks jurisdiction over one of Petitioner's claims because the claim concerns the temporary loss of email privileges, which is incognizable under § 2241. (*Id*. at 12-14.) The Court concludes that while Respondent fails to demonstrate that administrative remedies were available to Petitioner, Petitioner fails to demonstrate that he was prejudiced by any alleged lack of notice of the disciplinary proceedings in question. In arriving at this conclusion, the Court addresses Respondent's arguments in turn.

**I.     Administrative Exhaustion**

Before a court considers the merits of a § 2241 habeas petition, it must address administrative exhaustion. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). To exhaust a § 2241 claim, the petitioner must exhaust all available judicial and administrative remedies, unless waived by the court. *Id*. For § 2241 claims, the exhaustion requirement is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). If a petitioner fails to exhaust prudentially required administrative remedies, courts are instructed to either dismiss the petition without prejudice or stay the proceedings until the petitioner exhausts his remedies. *Id*.

An inmate is required to exhaust only *available* remedies, *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc), and administrative remedies may be functionally unavailable where: (i) the administrative procedure operates as a dead end—with officers

unwilling to provide any relief to aggrieved inmates; (ii) an administrative scheme is so opaque that it becomes incapable of use; and (iii) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation, *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). This list is non-exhaustive and there are other limited circumstances that render administrative remedies unavailable. *Andres v. Marshall*, 867 F.3d 1076, 1078-79 (9th Cir. 2017). Because failure to exhaust is an affirmative defense, it is the defendant's burden to show that there was an available administrative remedy that a petitioner did not exhaust. *Albino*, 747 F.3d at 1172.

### A.     Administrative Remedy Program

The administrative remedy program for prisoners at BOP facilities is promulgated under 28 C.F.R. § 542.10 *et seq.* (Doc. 13-2, ¶ 5.) The purpose of the program is to allow an inmate to seek formal review of an issue relating to any aspect of his confinement. *Id.* § 542.10(a). The Bureau has a four-step process for inmate grievances. (Doc. 13-2, ¶ 6.) The first step is informal resolution with prison staff. (*Id.*) The second step is the filing of a formal administrative remedy request. (*Id.*) The request must be filed within twenty calendar days following the date on which the basis of the request occurs. (*Id.*) The third step is an appeal of the warden's response to the regional director. (*Id.*) The appeal must be filed within twenty calendar days of the date the warden signed the response. (*Id.*) The fourth step is an appeal to the director. (*Id.*) Under the program, an inmate has not exhausted his administrative remedies until he has properly sought review at all three *formal* levels. (*Id.* (emphasis added).)

#### 1.     Respondent Fails To Demonstrate Available Remedies

As it concerns administrative exhaustion, Petitioner states that his counselor, Ms. Mack, is the only one that can issue him the necessary appeal forms for the incidents in question and that when he asked her for the forms, she advised him to "file it in [c]ourt," and that he could not have them. (Doc. 1 at 3.) Respondent argues that Petitioner fails to demonstrate exhaustion because the record demonstrates that he failed to even begin the process and that Petitioner fails to substantiate his claim that he was denied administrative

remedy forms with any facts that indicate administrative remedies were unavailable to him. (Doc. 13 at 8.) Respondent adds that any member of the Unit Team can provide Petitioner with administrative remedy forms at the facility. (*Id*. at 8-9.)

Construing the pleadings in the light most favorable to Petitioner,[5] the Court finds that administrative remedies were unavailable to him and denies Respondent's motion to dismiss on the issue. While the Court recognizes that a key consideration of prudential exhaustion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme," *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004), it is Respondent's burden to demonstrate that administrative remedies are *available*, not Petitioner's burden to demonstrate that they are unavailable, *see Albino*, 747 F.3d at 1172. Respondent's reference to Case Manager Mack's declaration fails to demonstrate the availability of administrative remedies. (*See* Doc. 13 at 8.) Respondent declares that "any member [of the] Unit Team can provide [Petitioner] with administrative remedy forms," (*id.*), and Mack declares that "[t]he Unit Team is comprised of the Unit Manager, Case Manager, Correctional Counselor, and Unit Secretary," (Doc. 13-2, ¶ 12). However, the evidence in the record demonstrates that Mack *is* a case manager and that he denied Petitioner's request for administrative remedy forms. (*Id*. ¶ 4.) In Mack's own words, he states that he remembers that Petitioner asked him for administrative remedy forms but that he instructed Petitioner to ask his correctional counselor for the forms when the counselor was scheduled to make rounds the following day. (*Id.*)

The record also demonstrates that Petitioner was housed in the highly restricted SHU at the time of his request—and was sometimes placed in restraints—which causes the Court to draw the reasonable inference that Petitioner's movements were limited and administrative remedy forms were not as readily accessible as they would have been in the general population. (*See* Doc. 13-2, ¶ 4 ("Petitioner asked me for administrative remedy forms when I conducted my rounds in the Special Housing Unit (SHU).") Because

---

[5]In ruling on a motion to dismiss a petition, the court "accept[s the] factual allegations in the [petition] as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (cleaned up).

evidence in the record demonstrates that administrative remedy forms were unavailable to Petitioner for the incidents in question, the Court waives the prudential exhaustion requirement and recommends that Respondent's motion to dismiss on the issue of exhaustion be denied. *See Albino*, 747 F.3d at 1174-76 (reversing district court on issue of exhaustion and ruling that defendants failed to prove administrative remedies were available when defendants' declarations on the availability of inmate complaint forms were contradicted by the petitioner's assertions).

## II.     Procedural Due Process Protections

While the Court recommends that Petitioner's exhaustion requirement be waived, it concludes that Petitioner fails to demonstrate that he is entitled to habeas relief. The Supreme Court has ruled that a prisoner has a liberty interest in the loss of good conduct credit and that an inmate facing a loss of such credit as a result of disciplinary violations is entitled to certain procedural due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 563-68 (1974). In *Wolff v. McDonnell*, the court held that an inmate facing the loss of good conduct credit is entitled to advance written notice of the claimed violation and a written statement as to the evidence relied upon and the reasons for the disciplinary action taken. 418 U.S. at 563. The inmate is also to be permitted to call witnesses and present documentary evidence when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals. *Id*. at 566.

Petitioner claims that prison officials violated his procedural due process rights because he failed to receive *any* notice of incident reports #3756325, 3756362, and 3756376,[6] and that corrections officers threatened him with sexual assault and bodily harm if he refused to waive his right to attend the disciplinary hearings related to these reports.

---

[6] Petitioner asserts that he failed to receive notice of any of the relevant incident reports. (*See* Doc. 1 at 5.) He asserts:

> [I] never received notice in Report No. 3756325[,] [and it] was not delivered to [me] as stated … by Lt. Alcantar … [N]otice was not provided at all and the camera will show this. . . . Petitioner avows no service ever given to him and the SHU B-Range camera will show this fact.

- 7 -

(Doc. 1 at 5-6.) Respondent argues that Petitioner's claims should be dismissed because the record of the disciplinary proceedings "establish that Petitioner was afforded each of [his] applicable *Wolff* rights," and that Petitioner "offers no allegations that he was denied any of the five *Wolff* requirements for inmate disciplinary proceedings." (Doc. 13 at 10.) Respondent adds that Petitioner "appear[s] to allege that he was not presented with proper notice of the charges against him within 24 hours from when Incident Report Nos. 3756325 and 3756376 were written, an alleged violation of Bureau policy." (*Id.*) Lastly, Respondent argues that the Court lacks jurisdiction over report #3756362 because "[Petitioner] was not subject to sanctions that could impact a protected liberty interest." (*Id*. at 12.) Agreeing that the basis for Petitioner's claims is flawed, the Court addresses whether Petitioner has due process protections over a temporary loss of email privileges and whether he has demonstrated the necessary prejudice to sustain his remaining claims.

### A. Incognizable Interest In Loss of Email Privileges

Respondent argues that the Court lacks jurisdiction over Petitioner's habeas petition as it relates to incident report #3756362 because the penalty for that incident, a 60-day loss of email privileges, fails to impact a protected liberty interest. (Doc. 13 at 12-14.) The Court agrees. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser*, 411 U.S. at 484. Habeas corpus relief is appropriate where it will result in *immediate release* or *shorten the duration* of the petitioner's confinement. *Id*. at 487 (emphasis added). A habeas petition that fails to attack the legality of imprisonment is subject to dismissal. *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979). The United States Circuit Court of Appeals for the Ninth Circuit has instructed that challenges concerning general conditions of confinement, *e.g.*, the loss of email privileges, are not cognizable under 28 U.S.C. § 2241. *See Wright v. Shartle*, 699 F. App'x 733 (9th Cir. 2017) (citing *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000)) (ruling that the loss of phone, visitation, and email privileges are not cognizable under § 2241 because "they do not concern the manner, location, or conditions of [a] sentence's execution."). A review of Petitioner's exhibits demonstrates that punishment for incident #3756362 was a

60-day loss of email privileges. (Doc. 1-2, ¶ 6 at 10.) This loss of privileges is incognizable because relief would not result in Petitioner's immediate release or shorten the duration of his confinement. *See e.g., Cobb v. Howard*, No. CV 20-00515-TUC-LCK, 2021 WL 5850885, at *2 (D. Ariz. Dec. 9, 2021), *aff'd,* No. 22-15073, 2022 WL 17176483 (9th Cir. Nov. 23, 2022) (ruling that the court lacked jurisdiction over petitioner's claim because a successful challenge to a 6-month loss of telephone privileges would not shorten his sentence); *Strouse v. Shartle*, No. CV-16-00237-TUC-RCC (EJM), 2017 WL 2224926, at *3 (D. Ariz. May 22, 2017), *report and recommendation adopted,* No. CV-16-00237-TUC-RCC, 2017 WL 2731059 (D. Ariz. June 26, 2017) (ruling that a 30-day loss of commissary privileges did not affect the duration of the petitioner's custody and that the court lacked jurisdiction over that claim). Accordingly, the Court recommends that this claim be denied.

### B.     Failure to Demonstrate Prejudice

In addition to determining that Petitioner fails to state a habeas claim for the loss of email privileges, the Court concludes that even taking Petitioner's allegations that he failed to receive notice of the remaining incident reports as true, Petitioner fails to demonstrate that the lack of notice caused him prejudice. It is uncontested that federal prisoners have a due process interest in disciplinary proceedings that may take away good conduct credits. *See* 18 U.S.C. § 3624(b); *Wolff*, 418 U.S. at 556-57. However, "[e]ven if a prison official's actions create a potential due process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation in order to obtain relief." *Jordan v. Zych*, No. 7:10-CV-00491, 2011 WL 2447937, at *4 (W.D. Va. June 15, 2011) (citing Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004)); *see also Lee v. Kramer*, No. 1:07-CV-0432 AWI JMD HC, 2008 WL 4507584, at *4 (E.D. Cal. Oct. 7, 2008), *report and recommendation adopted,* No. 107CV0432 AWI JMDHC, 2008 WL 5246383 (E.D. Cal. Dec. 16, 2008) (ruling that the petitioner's claim failed because he had not shown prejudice resulting from the failure to call his potential witnesses, or the failure to consider his witness list); *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (ruling that it is "inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without

making the appellate assessment as to whether the error was harmless or prejudicial").

Here, Petitioner fails to demonstrate prejudice as a result of his alleged failure to receive copies of his incident reports. The evidence in the record belies Petitioner's contentions that he failed to receive copies of the reports.  All three reports indicate when copies of the reports were delivered to Petitioner and by whom, (Doc. 13-1 at 21, 32, and 43), what Petitioner said during the UDC meetings on those reports, (*id.* at 22, 33, and 44), and even that a charged violation was reduced after the DHO reviewed the report and the UDC's recommendation, (*id.* at 41).  Accordingly, the Court recommends that Petitioner's remaining claims for habeas corpus relief be denied, and that Petitioner's § 2241 Petition, in its entirety, be dismissed with prejudice.

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the District Court enter an Order DENYING the Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1).

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen (14) days of being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted by the District Court.  If objections are filed, the parties should use the following case number: **CV-23-214-TUC-SHR**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.  The Clerk of Court shall send a copy of this Report and Recommendation to all parties.

Dated this 17th day of October, 2023.

Honorable Bruce G. Macdonald
United States Magistrate Judge